Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| LIZARDO ANTONIO PÉREZ PÉREZ, su esposa NORMA IRIS FELICIANO NIEVES y la SOCIEDAD LEGAL DE GANANCIALES compuesta por ambos<br>Apelados<br><br>v.<br><br>HÉCTOR LUIS ORTIZ LÓPEZ, su esposa ANA HILDA LÓPEZ RIVERA y la SOCIEDAD LEGAL DE GANANCIALES compuesta por ambos; CATHERINE ORTIZ LÓPEZ; su esposo ANTONIO RODRÍGUEZ LÓPEZ y la SOCIEDAD LEGAL DE GANANCIALES compuesta por ambos; ANA VERÓNICA ORTIZ LÓPEZ, su esposo DIMAS PAGÁN RAMOS y la SOCIEDAD LEGAL DE GANANCIALES compuesta por ambos; HÉCTOR LUIS ORTIZ LÓPEZ; JOHN DOE y JANE DOE; FULANO DE TAL y FULANA DE TAL<br>Apelantes | KLAN202200651 | *Apelación* procedente del Tribunal de Primera Instancia Sala de Yauco en Sabana Grande<br><br>Caso Núm.: YU2021CV00278<br><br>Sobre: Deslinde y Amojonamiento y/o Expediente de Dominio Contradictorio |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Jueza Mateu Meléndez, el Juez Marrero Guerrero y la Jueza Martínez Cordero[1].

*Martínez Cordero, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de noviembre 2023.

Comparecen Héctor Luis Ortiz López, su esposa Ana Hilda López Rivera y la Sociedad Legal de Gananciales compuesta por ambos; Katherine Ortiz López, su esposo Antonio Rodríguez López y la Sociedad Legal de Gananciales compuesta por ambos; Ana Verónica Ortiz López, su esposo Dimas Pagán Ramos y la Sociedad Legal de Gananciales compuesta por ambos; y Héctor Luis Ortiz López (en conjunto y en adelante, parte

---

[1] Véase, Orden Administrativa OATA-2023-001 del 9 de enero de 2023, en la que se asigna el presente recurso a la Hon. Beatriz M. Martínez Cordero en sustitución del Hon. Néry E. Adames Soto.

apelante), para solicitarnos la revisión de la *Sentencia* emitida el 24 de junio de 2022, notificada el 29 de junio de 2022, por el Tribunal de Primera Instancia, Sala Superior de Yauco (TPI).[2] Mediante el dictamen apelado el TPI concedió el remedio solicitado en la *Demanda*. Por tanto, determinó que el dominio de la propiedad en cuestión quedó justificado a favor de la parte apelada del título, por haberse acreditado su adquisición. El foro primario concluyó, además, que hubo temeridad por parte de la parte apelante por lo que impuso honorarios de abogados por este concepto. Como parte del dictamen emitido, el tribunal *a quo* ordenó al Registrador de la Propiedad a que, previa calificación, inscriba el dominio de la propiedad en cuestión, a favor de los apelados del título.

I

El presente caso tuvo su inicio el 14 de junio de 2021, con la presentación de una *Demanda* sobre deslinde y amojonamiento y/o expediente de dominio, presentada por el señor Lizardo Antonio Pérez, su esposa Norma Iris Feliciano Nieves y la Sociedad Legal de Gananciales compuesta por ambos (en adelante, parte apelada).[3] En ella, solicitaron al foro primario que ordenara el establecimiento de las colindancias y el amojonamiento según los linderos así como que declarara justificado a favor de esta parte el dominio del predio de terreno,[4] en el cual alegadamente edificaron, además, una estructura,[5] y ordenara la inscripción del mismo en el Registro de la Propiedad. Para ello, como parte de los procedimientos, demandaron a todos los colindantes de la propiedad en cuestión.

De lo que sigue, el 16 de agosto de 2021, los codemandados señora Katherine Ortiz López, su esposo Antonio Rodríguez López y la Sociedad

---

[2] Apéndice de la parte apelante, a las págs. 1-11.
[3] *Id.,* a las págs. 32-39.
[4] Solar de quinientos (500) metros cuadrados ubicado en el Barrio Sierra Alta de Yauco, Puerto Rico. Colinda por el NORTE, con Perfecta López; por el SUR, con Ramón López; por el ESTE, con Héctor Luis Ortiz López y por el OESTE, con Evelio Nieves.
[5] Casa de concreto que mide treinta y cuatro pies (34') de largo por treinta y dos pies (32') de ancho. Consta de dos (2) cuartos dormitorio, sala, cocina-comedor, baño, balcón y marquesina.

Legal de Gananciales compuesta por ambos presentaron su *Contestación a la Demanda.*[6] En esa misma fecha, el codemandado, señor Héctor Luis Ortiz López también presentó *Contestación a la Demanda.*[7] Por su parte, al día siguiente, entiéndase, el 17 de agosto de 2021, los codemandados Héctor Luis Ortiz López, su esposa Ana Hilda López Rivera y la Sociedad Legal de Gananciales compuesta por ambos presentaron *Contestación a la Demanda.*[8] Por último, el mismo 17 de agosto de 2021, los codemandados Dimas Pagán Ramos, su esposa Ana V. Ortiz López y la Sociedad Legal de Gananciales presentaron *Contestación a la Demanda.*[9]

Así las cosas, el 21 de julio de 2021, la parte apelada presentó una *Moción de Desistimiento* contra los codemandados Alexis Ortiz, su esposa Maridaly Colón González y la Sociedad Legal de Gananciales compuesta por ambos.[10] Sobre el particular, el foro primario emitió una *Sentencia Parcial* el 2 de agosto de 2021, notificándose la misma el 4 de agosto de 2021.[11]

Posteriormente, el 14 de marzo de 2022, se llevó a cabo la Conferencia con Antelación a Juicio (en adelante, CAJ).[12] En esta vista, las partes discutieron varios asuntos relacionados al caso, entre ellos, sus teorías y la prueba testifical y documental que estarían presentando. En tal sentido, el foro primario aclaró que se llevaría a cabo el juicio en su fondo pautado para el 10 y 12 de mayo de 2022, y que, en este, atendería todas las controversias traídas ante su consideración y dispondría de ellas en una sola sentencia. Asimismo, les advirtió a las partes que, de alguna parte actuar de manera temeraria le impondría honorarios de abogados a partir de $5,000.00.

---

[6] *Id.,* a las págs. 42-45.
[7] *Id.,* a las págs. 46-49.
[8] *Id.,* a las págs. 50-53.
[9] *Id.,* a las págs. 54-58.
[10] *Id.,* a las págs. 59-60.
[11] *Id.,* a las págs. 61-62.
[12] Véase, Entrada 90 al expediente judicial del TPI en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Así pues, el 10 de marzo de 2022, se presentó el *Informe de Conferencia con Antelación a Juicio*.[13] Posteriormente, el 4 de abril de 2022, se presentó una *Moción Solicitando Enmienda a Informe de Conferencia con Antelación a Juicio*[14], la cual el foro primario no autorizó, mediante *Resolución* emitida el 16 de abril de 2022, notificada el 20 de abril de 2022.[15]

Así las cosas, el 11 de mayo de 2022, el señor Héctor Luis Ortiz López, su esposa Ana Hilda López Rivera y la Sociedad Legal de Gananciales compuesta por ambos presentaron una *Moción Informativa*. En ella expresaron haber diligenciado las citaciones de nueve (9) testigos para el juicio en su fondo.[16] En lo pertinente a la controversia de autos, la señora Luz Divina Rivera fue citada.[17]

De ahí, el juicio en su fondo se celebró los días 10 y 12 de mayo de 2022.[18] Allí compareció la parte demandante y apelada de autos, por sí y por conducto de sus representantes legales. Por la parte demandada y apelante de autos con su representación legal; el señor Héctor Luis Ortiz López y su esposa Ana Hilda López Rivera acompañados de su representación legal; la señora Ana V. Ortiz López y Dimas Pagán Ramos junto a su representación legal; y Katherine Ortiz López, Antonio Rodríguez López y Héctor Luis Ortiz López, también junto a su representación legal. Además, compareció el Ministerio Público, pero este solicitó que se le relevara del caso, por entender que no existía la necesidad de su comparecencia, toda vez no había derechos del Estado que estuviesen afectados en esta controversia.

En el juicio en su fondo testificaron, por la parte demandante y aquí apelada, los siguientes testigos: (i) Lizardo Pérez Pérez; (ii) Erick Álvarez;

---

[13] Apéndice de la parte apelante, a las págs. 63-87.
[14] *Id.,* a las págs. 164-166.
[15] *Id.,* a la pág. 167.
[16] *Id.,* a las págs. 168-187.
[17] *Id.,* a las págs. 184-185.
[18] Apéndice de la parte apelada, a la pág. 4.

(iii) Alexis Ortiz López; (iv) José Ángel Nieves Albino; y (v) Juan José Nieves Albino.[19] Por su parte, la parte demandada y aquí apelante presentó a los siguientes testigos: (i) Héctor L. Ortiz López; (ii) Ana Hilda López Rivera; (iii) Tomás Medina Rodríguez; (iv) Mirna Ortiz López; (v) Noelia Nieves López; (vi) Ana Verónica Ortiz López; (vii) Katherine Ortiz López; y Héctor Luis Ortiz López.[20]

Sometido el caso, el foro primario dio por concluida la vista y manifestó que estaría emitiendo su dictamen posteriormente. Así, el 24 de junio de 2022, el foro primario dictó su *Sentencia*.[21] La misma fue notificada el notificada el 29 de junio de 2022.[22] Por medio de esta, el TPI hizo constar, que previo a iniciar el desfile de prueba, fueron consignados para el récord del tribunal estos cuatro (4) hechos estipulados por las partes:

1. El 5 de mayo de 1984, el codemandado, Héctor Luis Ortiz López y Don Ramón López Caraballo, suscribieron un documento privado sobre cesión de derechos y acciones hereditarias, Affidavit número 233, ante el notario Gilberto [Á]lvarez Crespo.

2. El 30 de abril de 1992, la parte demandante y Don Ramón López Caraballo, suscribieron "Documento Privado sobre Compraventa y Acta de Edificación," Affidavit número 13,965, ante el notario Julio Irving Rodríguez Torres.

3. Los predios de terreno que ocupan los demandantes y los codemandados no constan inscritos en el Registro de la Propiedad.

4. El 17 de mayo de 2010, se otorgó la Escritura número 17 sobre Cesión de Derechos, ante la notario María de los Ángeles Ruiz Rivera, suscrita por Harry, Pergelia, Brunilda, Dorina, Miriam, Mirna Iris, Noelia y Orlando, todos de apellidos Ortiz López y Héctor L. Ortiz López.[23]

Del mismo modo, a base de la prueba desfilada en la vista, el foro primario formuló las siguientes veinte (20) determinaciones de hechos:

---

[19] Apéndice 1 de la parte apelada, a las págs. 1-5
[20] *Id.*
[21] Apéndice de la parte apelante, a la pág. 11.
[22] *Id.,* a la pág. 1.
[23] *Id.,* a la pág. 5.

1. La parte demandante adquirió de Don Ramón López Caraballo, en enero del año 1984[,] la siguiente propiedad.

   "Solar de quinientos (500) metros cuadrados ubicado en el Barrio Sierra Alta de Yauco, Puerto Rico. Colinda por **NORTE,** con Perfecta López; por el **SUR,** con Ramón López; por el **ESTE**, con Héctor Luis Ortiz López y por el **OESTE,** con Evelio Nieves."

2. Que la parte demandante pagó la cantidad de $2,000.00 en efectivo por el terreno adquirido.

3. La parte demandante construyó su residencia en el referido predio de terreno durante los años 1984 al 1986.

4. La parte demandante comenzó a residir en mayo del año 1986.

5. La parte demandante y Don Ramón López Caraballo suscribieron "Documento Privado de Compraventa y Acta de Edificación", notarizado ante el Lcdo. Julio Irving Rodríguez Torres, el 30 de abril de 1992, Affidavit número 13,965. Del documento se puede colegir que la venta fue antes de la fecha que tiene el mismo, ya que establece que el pago se hizo con anterioridad a su otorgamiento. Del testimonio del Sr. Lizardo Antonio Pérez Pérez, al que este Tribunal le dio entera credibilidad, lo ubica comprando la propiedad en enero del año del año 1984.

6. El referido predio de terreno de la parte demandante no consta inscrito en el Registro de la Propiedad.

7.  Los demandantes solicitaron y obtuvieron los permisos de la Administración de Reglamentos y Permisos (ARPE) para la instalación de los servicios de luz, Solicitud Número 86-60-E-904 PPP, el 29 de septiembre de 1986.

8. Los demandantes solicitaron y obtuvieron los permisos de la Administración de Reglamentos y Permisos (ARPE) para la instalación de los servicios de agua, Caso Núm. 02AS7-00000-04999, con fecha de 3 de febrero de 2003. Del testimonio del demandante, Lizardo Antonio Pérez Pérez y a quien a este Tribunal ya ha expresado que otorga total credibilidad, el servicio de agua a su residencia lo obtuvo de un pozo comunitario en el año 1986 hasta el año 2003.

9. La parte demandante es dueña en pleno dominio de la propiedad antes descrita porque la ha poseído en concepto de dueño, desde el año 1984, de forma pública, pacífica, ininterrumpida por más de 30 años y de buena fe.

10. La parte demandante no fue interrumpida en su posesión en concepto de dueño durante el término que ha poseído el terreno. De la prueba desfilada se concluye que, la única vez que la parte codemandada, Héctor Luis Ortiz López y su esposa Ana Hilda López Rivera recurrieron a la vía judicial en

contra de los demandantes, fue mediante la querella sobre Ley 140 JAQ2021-170, radicada el 7 de junio de 2021 y de la cual este Tribunal tomó conocimiento judicial.

11. El Ing. José A. Vázquez Maldonado, licencia 11115, perito de la parte demandante y el Agrim. [Á]ngel Noel Colón Guzmán, licencia 13952, perito de los codemandados, Héctor Luis Ortiz López, su esposa Ana Hilda López Rivera y la Sociedad Legal de Gananciales compuesta por ambos, mensuraron la propiedad y prepararon un Plano de Mensura del predio de terreno a solicitud de las partes. El Tribunal acoge del informe la opción número tres, adoptada por los peritos, la cual establece los linderos del terreno que ocupan los demandantes. El Tribunal al acoger la recomendación de los peritos, en cuanto a los linderos y cabida, determina que la cabida del terreno es 400 metros y no 500 metros como se alegó en la demanda.

12. Según el Plano de Mensura, la cabida y colindancias del predio de terreno son las siguientes:
**RUSTICA:** Predio de terreno radicado en la carretera PR 375, kilómetro 2.6 (interior), Barrio Sierra Alta, Sector Quebrada Grande del término municipal de Yauco, Puerto Rico, con un área superficial **de CUATROCIENTOS METRO CUADRADOS** (400.00mc) equivalentes a cero puntos mil dieciocho cuerdas (0.1018 cdas). En lindes por el **NORTE,** con camino vecinal asfaltado; por el **SUR, ESTE y OESTE,** terrenos de Héctor Luis Ortiz López y Ana Hilda López Rivera.

Enclava una casa de hormigón que mide treinta y cuatro pies (34') de largo por treinta y dos pies (32') de ancho. Consta de dos (2) cuartos dormitorio, sala, cocina-comedor, baño, balcón y marquesina.

13. Los puntos de colindancias fueron establecidos según el Plano de Mensura preparado por los peritos de las partes.

14. El predio de terreno y la estructura de la parte demandante tiene un valor, conforme a la tasación estipulada por las partes del tasador Erick [Á]lvarez Nazario, por la cantidad de **$78,000.00;** la estructura es una edificación antigua, por lo que no cuenta con el permiso de construcción.

15. La propiedad no tiene cargas ni gravámenes.

16. La parte demandante carece de un título inscribible en el Registro de la Propiedad correspondiente.

17. El número catastral de referencia de la propiedad es 337-030-001-31-001 según el Centro de Recaudación de Ingresos Municipales (CRIM).

18. La parte demandante interesa que se inscriba a su favor el dominio del inmueble en el Registro de la Propiedad correspondiente.

19. La parte demandante notificó a las agencias de gobierno pertinentes, la demanda de deslinde y amojonamiento y/o expediente de dominio y no expresaron objeción a la misma.

20. La parte demandante tiene una reclamación que justifica la concesión de un remedio.[24]

A base de las determinaciones de hechos mencionadas, el TPI concedió el remedio solicitado en la *Demanda.* Por tanto, determinó que el dominio de la propiedad en cuestión quedó justificado a favor de la parte apelada, por haberse acreditado su adquisición.[25] El foro primario concluyó, además, que los apelantes del título fueron temerarios por lo que impuso honorarios por temeridad, a favor de la parte apelada, a razón de lo siguiente: (i) al señor Héctor Luis Ortiz López, su esposa Ana Hilda López Rivera, la suma de $4,000.00; (ii) a la señora Katherine Ortiz López, a su esposo Antonio Rodríguez López y a la Sociedad Legal de Gananciales compuesta por ambos, así como al señor Héctor Luis Ortiz López, la suma de $1,000.00; y (iii) a la señora Ana V. Ortiz López, su esposo Dimas Pagán Ramos y la Sociedad Legal de Gananciales compuesta por ambos, la suma de $2,000.00.[26] Como parte del dictamen emitido, el tribunal *a quo* ordenó al Registrador de la Propiedad a que, previa calificación, inscriba el dominio de la propiedad en cuestión, a favor de los demandantes del título.[27]

Inconforme, el 7 de julio de 2022, la señora Ana V. Ortiz López, su esposo Dimas Pagán Ramos y la Sociedad Legal de Gananciales compuesta por ambos presentaron una *Moción de Reconsideración de Honorarios.*[28] En síntesis, razonaron que no debía imputársele honorarios de abogados a esta parte, toda vez que su comparecencia obedeció al interés propietario que tiene su padre y no por ser colindante aduciendo que precisamente la falta de colindancias fue una de las razones que motivó este pleito.

---

[24] *Id.,* a las págs. 6-8.
[25] *Id.,* a la pág. 9.
[26] *Id.,* a las págs. 10-11.
[27] *Id.,* a la pág. 11.
[28] *Id.,* a las págs. 12-17.

También inconforme, el 14 de julio de 2022, señor Héctor Luis Ortiz López, su esposa Ana Hilda López Rivera y la Sociedad Legal de Gananciales compuesta por ambos presentaron una *Moción de Reconsideración.*[29] En esencia, argumentaron que en el juicio en su fondo se demostró que esta parte era dueña del predio en controversia desde 1984. Además, sostuvieron que la parte apelada no cumplió con los requisitos del expediente de dominio y que la única evidencia que demostraron sobre su supuesta adquisición de terreno databa del 1992 y no del 1984 como plantea la parte apelada. En respuesta, el 18 de julio de 2022, el foro primario emitió y notificó dos (2) *Resoluciones* mediante las cuales denegó ambas solicitudes de reconsideración.[30]

Insatisfechos aún, el 17 de agosto de 2022, compareció la parte apelante, mediante un recurso de *Apelación* y esbozó la comisión de cinco (5) errores por el foro primario, a saber:

PRIMER ERROR:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL RESOLVER EL CASO DE EP[Í]GRAFE BAJO LAS DISPOSICIONES DE UN EXPEDIENTE DE DOMINIO CL[Á]SICO[.]

SEGUNDO ERROR:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCEDERLE CUATROCIENTOS METROS DE TERRENO A LA PARTE DEMANDANTE[.]

TERCER ERROR:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR CON LUGAR LA DEMANDA Y DESLINDAR EL PREDIO DE [SIC] OCUPADO POR LA PARTE DEMANDANTE DEL TERRENO DE DON H[É]CTOR ORTIZ[.]

CUARTO ERROR:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL APLICAR LA PRESUNCI[Ó]N DE LA REGLA 304 (5) DE LAS DE EVIDENCIA EN RELACIÓN CON LA SEÑORA LUZ DIVINA RIVERA[.]

---

[29] *Id.,* a las págs. 18-28.
[30] *Id.,* a las págs. 29-30. Véase, además, Entradas 124 y 126 en el SUMAC.

QUINTO ERROR:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPONER UNA PARTIDA POR HONORARIOS POR TEMERIDAD A SER SATISFECHA POR LOS COMPONENTES DE LA PARTE DEMANDADA[.]

Mediante *Resolución* emitida el 20 de enero de 2023, este Tribunal acogió la trascripción de la prueba oral, según presentada.[31] De ahí, el 28 de abril de 2023, la parte apelante presentó un alegato suplementario, intitulado *Escrito de Apelación.* Allí, la parte apelante esgrimió la comisión de tres (3) errores alegadamente cometidos por el foro primario, a saber:

PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LA PARTE DEMANDANTE CUMPLÍA CON LOS REQUISITOS PARA UN EXPEDIENTE DE DOMINIO, ASÍ COMO LA SOLICITUD DE DESLINDE Y AMOJONAMIENTO, LO QUE DIO BASE A LA DETERMINACIÓN DE CONCEDERLE CUATROCIENTOS (400) METROS DE TERRENO[.]

SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL APLICAR LA PRESUNCI[Ó]N DE LA REGLA 304 (5) DE LAS DE EVIDENCIA EN RELACIÓN CON LA SEÑORA LUZ DIVINA RIVERA[.]

TERCER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPONER UNA PARTIDA POR HONORARIOS POR TEMERIDAD A SER SATISFECHA POR LOS COMPONENTES DE LA PARTE DEMANDADA[.]

Por su parte, el 27 de junio de 2023, la parte apelada presentó su *Alegato en Oposición a la Apelación.* Subsiguientemente, tras evaluar el expediente de autos, el 26 de septiembre de 2023, este Tribunal le requirió a la parte apelante acreditar haber notificado el Alegato Suplementario al Procurador General de Puerto Rico. En respuesta, el 2 de octubre de 2023, la parte apelante presentó *Moción en Cumplimiento de Orden y Aclaratoria.* En ella, expresó que el Estado Libre Asociado de Puerto Rico no era parte, ni se afectaban intereses del Estado y que el asunto era entre partes privadas, por lo que, no notificó el escrito al Procurador General de Puerto Rico. De ahí, el 27 de octubre de 2023, la Oficina del Procurador General

---

[31] Puntualizamos que en dicha transcripción se encuentran presentes únicamente los testimonios de los siguientes testigos: (i) Lizardo Pérez Pérez, (ii) Alexis Ortiz López; (iii) Héctor L. López Ortiz; y el de (iv) Ana H. López Rivera.

presentó un *Escrito en Cumplimiento de Resolución*. Mediante este, el Procurador General adujo que el Estado no es una parte afectada por la Sentencia apelada, por lo cual su comparecencia era innecesaria.

Quedando el asunto perfeccionado y contando con el beneficio de la comparecencia de las partes, procederemos a exponer el derecho aplicable.

II

**A. Recurso de Apelación**

La Regla 52.2(a) de Procedimiento Civil,[32] dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[33] La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[34] Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.
>
> En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios y funcionarias, o una de sus instrumentalidades que no fuere una corporación pública, o en que los Municipios de Puerto Rico o sus funcionarios y funcionarias sean parte en un pleito, el recurso de apelación se formalizará, por cualquier parte en el pleito que haya sido perjudicada por la sentencia, presentando un escrito de apelación dentro del término jurisdiccional de sesenta días, contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado.[35]

No obstante, el término de treinta (30) días para acudir en alzada puede quedar interrumpido mediante la presentación oportuna de una

---

[32] 32 LPRA Ap. V, R. 52.2 (a).
[33] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000). *Arriaga v. FSE,* 145 DPR 122, 131 (1998). *Loperena Irizarry v. ELA,* 106 DPR 357, 360 (1977).
[34] *Rodríguez Mora v. García Lloréns,* 147 DPR 305, 309 (1998).
[35] 4 LPRA Ap. XXII-B, R. 13 (A).

moción de reconsideración fundamentada.[36] En tal caso, el curso del término para apelar comienza a partir del archivo en autos copia de la notificación de la resolución que resuelve la moción.[37] Esto, a pesar de que se haya declarado la moción No Ha Lugar.

En instancias en las que un bien inmueble nunca ha sido inscrito en el Registro de la Propiedad, nuestro ordenamiento jurídico reconoce el expediente de dominio como el procedimiento mediante el cual puede gestionarse la inscripción. Por medio de este, los propietarios que carezcan de títulos inscribibles de dominio pueden inscribir su derecho, justificándolo de la manera que establece la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, (en adelante, Ley Núm. 210-2015),[38] Se trata de un procedimiento judicial de naturaleza *ex parte,*[39] que no declara derechos, sino que justifica el dominio del promovente.[40] En vista de ello, el juez solo está facultado para declarar justificado o no el dominio de los bienes.[41] Además, la resoluciones emitidas de un expediente de dominio no constituyen cosa juzgada y tampoco impiden un juicio declarativo posterior a instancias de partes interesadas.[42]

El procedimiento de expediente de dominio está regulado por la Ley Núm. 210-2015,[43] específicamente, en los Artículos 185 al 192.[44] A tales efectos, el Artículo 185 de la Ley núm. 210-2015, dispone para que todo propietario que careciere de título inscribible de dominio pueda inscribir

---

[36] 32 LPRA Ap. V, R. 47.
[37] *Id.*
[38] Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley Núm. 210 de 8 de diciembre de 2015, 30 LPRA sec. 6001 *et seq.*
[39] Ello, en la medida en que no se suscite una contienda entre las partes dentro del pleito y no lo convierta en contencioso. Véase Artículo 191 de la Ley 210-2015. Véase, además, *Benítez v. Registrador*, 71 DPR 563 (1950).
[40] L.R. Rivera, Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 3ra Ed., San Juan, Jurídica Editores, 2012, pág. 338.
[41] *Toro v. Registrador*, 25 DPR 472, 476 (1917).
[42] *Rodríguez v. Registrador,* 75 DPR 712, 732 (1953).
[43] *Sánchez González v. Registrador,* 106 DPR 361, 369 (1977).
[44] 30 LPRA secs. 6291-6298.

dicho dominio, justificándolo con una serie de formalidades allí requeridas.[45]

De otro lado, al amparo del Artículo 187 de la Ley Núm. 210-2015 y, a petición del promovente, el Tribunal celebrará una vista para atender las alegaciones en torno a la solicitud de expediente de dominio, así como las prueba que se presenten en apoyo a dicha solicitud.[46] Así, el Tribunal, a la luz de las alegaciones de las partes y las pruebas presentadas, declarará sin más si se justifica o no el dominio sobre los bienes objeto de procedimiento.[47]

Finalmente, cabe destacar que, el Artículo 191 de la Ley Núm. 210-2015 dispone que "[e]l expediente de dominio se utilizará para justificar el dominio y no equivale a una acción declaratoria de usucapión".[48] Asimismo, cuando "una de las personas citadas se oponga a la acreditación del título propuesto por el solicitante y alegue que tiene un mejor derecho que el promovente, se entenderá convertido el procedimiento de expediente de dominio en un juicio contencioso ordinario".[49] Del mismo modo, el Artículo 192 de la referida Ley dispone que "[l]a declaración de estar o no justificado el dominio no impedirá que se pueda presentar posteriormente una acción ordinaria contradictoria de dominio por quien se considere perjudicado…".[50]

## B. Deslinde y Amojonamiento

El Artículo 829 del Código Civil de Puerto Rico de 2020, define el concepto deslinde como "la operación por la cual se fijan los límites materiales de una finca que están confundidos".[51] Se trata de una acción de dominio protectora que tiene como propósito determinar los linderos confundidos por dos heredades contiguas.[52] Por otro lado, el Código Civil

---

[45] 30 LPRA sec. 6291.
[46] 30 LPRA sec. 6293.
[47] *Id.*
[48] 30 LPRA sec. 6297.
[49] *Id.*
[50] 30 LPRA sec. 6298.
[51] Art. 829 del Código Civil de P.R., 31 LPRA sec. 8132.
[52] *Ramírez Quiñones v. Soto Padilla* 168 DPR 142, 157 (2006).

de Puerto Rico de 2020, también define el concepto de amojonamiento como "el acto mediante el cual se colocan signos estables que marcan los límites establecidos".[53]

De otra parte, nuestro ordenamiento jurídico dispone que el propietario tiene derecho a llevar una acción de deslinde y amojonamiento con la citación de aquellos dueños de los predios colindantes.[54] Del mismo modo, es preciso destacar que las acciones de deslinde y amojonamiento son imprescriptibles.[55]

En cuanto a cómo debe efectuarse este procedimiento, el Código Civil de Puerto Rico de 2020, en su Artículo 832 dispone que:

> El deslinde puede efectuarse por cualquier procedimiento técnico de agrimensura, con citación de los propietarios colindantes. Estos últimos deben presentarse, por sí mismos o por medio de representantes, en el lugar, el día y la hora señalados, con los títulos suficientes de propiedad que amparen su derecho.
>
> A falta de títulos suficientes, el deslinde puede efectuarse por lo que resulta de la posesión en que estén los colindantes. Para los efectos de este artículo, constituye título suficiente aquel que provea, de forma adecuada, la cabida de la finca y los restantes datos necesarios para su deslinde y amojonamiento.[56]

Igualmente, si los títulos no determinaran el límite que le pertenece a cada propietario y esta situación no puede resolverse por la posesión o la presentación de alguna otra prueba, el deslinde "debe hacerse mediante la distribución, en partes iguales, del terreno objeto del conflicto".[57] De igual modo, si los títulos de los colindantes indicaran un espacio menor o mayor al que comprende la totalidad del terreno, la falta o el aumento deberá atribuirse proporcionalmente.[58]

---

[53] Art. 829 del Código Civil de P.R., 31 LPRA sec. 8132.
[54] Art. 830 del Código Civil de P.R., 31 LPRA sec. 8133.
[55] Art. 831 del Código Civil de P.R., 31 LPRA sec. 8134.
[56] Art. 832 del Código Civil de P.R., 31 LPRA sec. 8135.
[57] Art. 833 del Código Civil de P.R., 31 LPRA sec. 8136.
[58] Art. 834 del Código Civil de P.R., 31 LPRA sec. 8137.

Ahora bien, se ha reiterado en varias ocasiones que una sentencia en una acción de deslinde no da ni quita derechos.[59] A su vez, el Tribunal Supremo de Puerto Rico ha reconocido que:

> Bajo la mencionada regla hay que hacer constar en la demanda (1) descripción de la propiedad; (2) el interés que la parte reclame tener en ella; (3) nombre de la persona en posesión de la propiedad; (4) la razón por la cual se solicita se haga el deslinde; y (5) requerimiento hecho a la otra parte y negativa de ésta.[60]

## C. Prescripción adquisitiva o usucapión

Nuestro ordenamiento jurídico permite la adquisición del dominio y todos los derechos reales mediante la figura de la prescripción adquisitiva o usucapión.[61] Esta figura jurídica se funda en la conveniencia de proteger la seguridad jurídica y atender el interés social de amparar una situación estable frente al ejercicio tardío de los derechos.[62]

Ahora bien, el efecto principal de la usucapión es la adquisición del dominio.[63] A raíz de ello, "una vez transcurrida la totalidad del término fijado en nuestro ordenamiento, de inmediato se materializa o consolida el dominio en la persona que, en unión a sus anteriores dueños, ha poseído durante ese periodo con los requisitos de ley".[64] Cabe resaltar, que la posesión para adquirir el dominio por usucapión debe ser una pública, pacífica, continua y en concepto de dueño.[65]

Consecuentemente, procede la determinación de ante cuál tipo de prescripción adquisitiva nos encontramos, ordinaria o extraordinaria.[66] La prescripción ordinaria del dominio requiere justo título y poseer las cosas de buena fe por el tiempo determinado por ley.[67] El concepto de buena fe envuelve la creencia del poseedor de que la persona de quien recibió la

---

[59] *Ramírez Quiñones v. Soto Padilla supra,* a la pág. 159 (2006).
[60] *Zalduondo v. Méndez,* 74 DPR 637, 641 (1953).
[61] Art. 745 del Código Civil de P.R., 31 LPRA sec. 7961.
[62] J. Puig Brutau, *Fundamentos de Derecho Civil,* 4ta ed., Barcelona, Ed. Bosch, 1994, T. III, Vol. 1, pág. 328.
[63] *Adm. Terrenos v. SLG Rivera-Morales,* 187 DPR 15, 26 (2012).
[64] *Ex parte Reyes; Rodríguez, Opositora,* 68 DPR 854, 856 (1948).
[65] . Art. 778 del Código Civil de P.R., 31 LPRA sec. 8022.
[66] *Adm. Terrenos v. SLG Rivera-Morales, Id.,* 27. J.R. Vélez Torres, *Curso de Derecho Civil: los bienes, los derechos reales,* Madrid, Ed. Offirgraf, T. II, 1983, pág. 265.
[67] Art. 783 del Código Civil de P.R., 31 LPRA sec. 8027.

cosa era su dueña y que podía transmitir su dominio.[68] Por otra parte, por justo título se entiende aquel que legalmente baste para transferir el dominio o derecho real de cuya prescripción se trate.[69] Por su parte, la prescripción adquisitiva extraordinaria se caracteriza por la inexistencia de los requisitos de justo título y buena fe, que se suplen por la exigencia de un plazo más largo de posesión.[70]

El término para obtener la prescripción ordinaria para el dominio de bienes inmuebles se da por la posesión durante diez (10) años.[71] Con relación a la prescripción adquisitiva extraordinaria prescribe el dominio sobre los bienes inmuebles por su posesión no interrumpida durante treinta (20) años, sin necesidad de título ni de buena fe.[72] Este efecto se produce automáticamente en el momento en que el poseedor completa el periodo requerido.[73]

Es preciso aclarar que, el tipo de posesión requerida para adquirir el dominio de un bien inmueble mediante usucapión es la denominada posesión civil.[74] La posesión civil es la tenencia de una cosa o el disfrute de un derecho por una persona, unidos a la intención de hacer suya la cosa o el derecho.[75]

Así pues, la usucapión requiere que la posesión sea en concepto de dueño porque sólo la posesión en concepto de dueño puede servir de título para adquirir el dominio.[76] Una persona es poseedora en concepto de dueño cuando actúa como el verdadero titular por los actos que realiza en relación con la propiedad.[77] Cónsono con lo anterior, se entiende que un inmueble es poseído en concepto de dueño cuando la opinión pública o

---

[68] *Bravman, González v. Consejo Titulares*, 183 DPR 827, 838 (2011).
[69] *Adm. Terrenos v. SLG Rivera-Morales, supra,* a la pág. 27.
[70] *Id.*, a la pág. 28.
[71] Art. 788 del Código Civil de P.R., 31 LPRA sec. 8032.
[72] *Id.*
[73] *Adm. Terrenos v. SLG Rivera-Morales,* supra*,* a la pág. 28.
[74] *Id.*, a la pág. 29.
[75] Art. 704 del Código Civil de P.R., 31 LPRA sec. 7822.
[76]*Bravman, González v. Consejo Titulares*, supra, a la pág. 839 (2011). J. Puig Brutau, *Fundamentos de Derecho Civil,* 3ra ed., Barcelona, Ed. Bosch, 1989, T. III, Vol. 1, pág. 318.
[77] Art. 779 del Código Civil de P.R., 31 LPRA sec. 8023.

percepción general entiende que el poseedor es el verdadero dueño, en unión a los actos que realice con relación al inmueble, independientemente de la referida creencia.[78] Así, los actos del poseedor realizados bajo la mera tolerancia del dueño son insuficientes para cumplir con los requisitos de la usucapión extraordinaria debido a que no se configura la posesión en concepto de dueño.[79]

En razón de ello, el efecto consumado de la usucapión no será posible si se interrumpe el término o plazo mediante el cual se posee la cosa o el derecho como dueño de forma pública y pacífica.[80] Conforme dispone el Código Civil de Puerto Rico de 2020, para los efectos de la usucapión, la posesión se interrumpe en una de las siguientes circunstancias:

> (a) por su cese durante más de un (1) año;
> (b) por el emplazamiento o citación judicial hecha al poseedor, aunque sea por mandato de un tribunal sin competencia;
> (c) por el requerimiento judicial o notarial, siempre que, dentro de dos (2) meses de practicado, se presente ante el tribunal la demanda sobre posesión o dominio de la cosa cuestionada; o
> (d) por cualquier reconocimiento expreso o tácito del derecho del dueño por parte del poseedor.[81]

Por último, es preciso resaltar el Artículo 1814 del Código Civil de Puerto Rico de 2020, el cual lee como de la siguiente forma:

> Los términos prescriptivos, de caducidad o de usucapión que estén transcurriendo en el momento en que este Código entre en vigor, tienen la duración dispuesta en la legislación anterior; pero si el término queda interrumpido después de la entrada en vigor de este Código, su duración será la determinada en este.[82]

### D. Regla 304 (5) de las Reglas de Evidencia

El Capítulo I de las Reglas de Evidencia aborda varias disposiciones generales. La Regla 110 dispone lo relativo a la evaluación y suficiencia de

---

[78] *Vélez Cordero v. Medina*, 99 DPR 113, 119 (1970).
[79] *Adm. Terrenos v. SLG Rivera-Morales*, *supra*, a la pág. 29.
[80] *Id.*, a las págs. 29-30.
[81] Art. 704 del Código Civil de P.R., 31 LPRA sec. 7822.
[82] Art. 1814 del Código Civil de P.R., 31 LPRA sec. 11719. En ese sentido hay que retrotraerse a los Artículo 1857-1859 del derogado Código Civil de 1930, los cuales establecen los términos de la prescripción adquisitiva de acuerdo con la circunstancia particular en que se posea el inmueble.

la prueba. En lo concernientes, la referida Regla lee como sigue: "[l]a juzgadora o el juzgador de hechos deberá evaluar la evidencia presentada con el propósito de determinar cuáles hechos han quedado establecidos o demostrados, con sujeción a los principios siguientes: [...] (G) Cuando pareciere que una parte, teniendo disponible una prueba más firme y satisfactoria, ofrece una más débil y menos satisfactoria, la evidencia ofrecida deberá considerarse con sospecha. [...]".[83]

El Capítulo III de las Reglas de Evidencia aborda lo relativo a las presunciones. En la Regla 304 se menciona una serie de presunciones específicas. La Regla 304, en lo aquí pertinente, lee como sigue: "Las presunciones son aquéllas establecidas por ley o por decisiones judiciales. Entre las presunciones controvertibles se reconocen las siguientes: [...] (5) Toda evidencia voluntariamente suprimida resultará adversa si se ofreciere. [...]".[84] Cuando se trata de un testigo anunciado, por una parte, la referida Regla obliga a la parte que lo anuncia y no lo va a usar, a ponerlo a disposición de la otra parte para escapar la presunción de que su testimonio le sería adverso.[85]

### E. Honorarios de Abogado por Temeridad

La Regla 44 de las Reglas de Procedimiento Civil aborda lo relativo a costas, honorarios de abogado e interés legal. La Regla 44.1 de las Reglas de Procedimiento Civil tiene un fin de índole disuasivo: desalentar los pleitos temerarios y superfluos.[86] En particular, la Regla 44.1 (d) de las Reglas de Procedimiento Civil dispone lo siguiente sobre los honorarios de abogados:

> [...]
> (d) *Honorarios de abogado.* En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios

---

[83] 32 LPRA Ap. VI, R. 110 (G).
[84] 32 LPRA Ap. VI, R. 304(5).
[85] E. L. Chiesa, *Tratado de Derecho Probatorio,* Primera Edición, Estados Unidos de Norte América, Publicaciones JTS, 2005, Tomo II, pág. 1013.
[86] *J.T.P. Development Corp. v. Majestic Realty Corp.,* 130 DPR 456, 460 (1992).

de abogado que el tribunal entienda correspondan a tal conducta. [...][87]

El concepto temeridad no está expresamente definido por la Regla 44.1(d) de las Reglas de Procedimiento Civil.[88] La temeridad ha sido definida como:

> [...] una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. También sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces exorbitante para su peculio.[89]

Existen varias instancias bajo las cuales puede surgir temeridad, a saber: (i) contestar una demanda y negar responsabilidad total, aunque se acepte posteriormente; (ii) defenderse injustificadamente de la acción; (iii) creer que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad, pudiendo limitar la controversia a la fijación de la cuantía a ser concedida; (iv) arriesgarse a litigar un caso del que se desprendía prima facie su responsabilidad; y, (v) negar un hecho que le conste es cierto a quien hace la alegación.[90] A tales efectos, el propósito de la imposición de honorarios de abogado en casos de temeridad es: "establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito".[91]

La determinación de temeridad es de índole discrecional, por lo que los tribunales apelativos solo debemos intervenir con ella cuando nos enfrentemos a un caso de abuso de discreción.[92] Ahora bien, una vez el

---

[87] 32 LPRA Ap. V, R. 44.1 (d).

[88] *Fernández v. San Juan Cement Co., Inc.,* 118 DPR 713, 718 (1987).

[89] *Id.*

[90] *Blas v. Hosp. Guadalupe,* 146 DPR 267, 335-336 (1998).

[91] *Andamios de P.R. v. Newport Bonding,* 179 DPR 503, 520 (2010).

[92] S.*L.G. Flores–Jiménez v. Colberg,* 173 DPR 843, 866 (2008). *Colón Santos v. Coop. Seg. Mult. P.R.,* 173 DPR 170 (2008). *P.R. Oil v. Dayco,* 164 DPR 486 (2005).

tribunal sentenciador concluye que una parte ha sido temeraria, es imperativa la imposición de honorarios de abogado.[93]

### F. Apreciación de la Prueba, Deferencia Judicial y Discreción Judicial

Como es sabido, el ejercicio discrecional de la apreciación de la prueba que ejerce el TPI y las determinaciones que realiza están revestidas de confiabilidad y merecen respeto y deferencia.[94] Por ello, la valoración que lleva a cabo el foro primario se presume correcta, toda vez que es este quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos, así como sus lenguajes no verbales.[95] Por su parte, un foro apelativo cuenta solamente con "récords mudos e inexpresivos", por lo que se le debe respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos.[96] En ese sentido, y como regla general, no debemos intervenir con las determinaciones que este haya efectuado en virtud de la presunción de corrección de la que gozan.[97]

En vista de lo anterior, nuestro máximo foro ha resuelto que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, o cuando un análisis integral de la prueba así lo justifique.[98] El Alto Foro ha determinado que un juzgador incurre en pasión, prejuicio o parcialidad si actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso

---

[93] *P.R. Oil v. Dayco*, 164 DPR 486, 511 (2005).
[94] *Pueblo v. Pérez Nuñez*, 208 DPR 511, 514 (2022). *Argüello v. Argüello*, 155 DPR 62, 79 (2001) citando a *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987). *Trinidad v. Chade*, 153 DPR 280, 289 (2001).
[95] *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013). *Pueblo v. Santiago*, 176 DPR 133, 148 (2009). *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000).
[96] *Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 177 DPR 345, 356 (2009). *Trinidad v. Chade, supra*, a la pág. 291.
[97] *Pueblo v. Pérez Nuñez, supra*, a la pág. 529.
[98] *Pueblo v. Calderón Álvarez,* 140 DPR 627, 644 (1996). *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994). *Rivera Pérez v. Cruz Corchado*, 119 DPR 8, 14 (1987). S*ierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

antes de que se someta prueba alguna.[99] En consecuencia, al este tribunal apelativo enfrentarse a la tarea de revisar las determinaciones del foro de instancia, no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad efectuadas por el mismo, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[100]

Con relación al error manifiesto, un juzgador incurre en este cuando de un análisis de la totalidad de la evidencia, este Tribunal queda convencido de que las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida.[101] Por tanto, debe existir base suficiente en la prueba admitida que apoye la determinación del foro.[102]

De igual forma, se podrá intervenir con la determinación del TPI cuando la referida valoración se aparte de la realidad fáctica o resulte inherentemente imposible o increíble; de lo contrario, el tribunal apelativo deberá abstenerse de intervenir con la apreciación de la prueba hecha por el juzgador de los hechos.[103]

Ahora bien, cabe destacar que, el Tribunal Supremo ha resuelto que, en instancias en que las conclusiones de hecho que realice el TPI estén basadas en prueba pericial o documental, un tribunal revisor estará en la misma posición que el tribunal *a quo*.[104] Por tanto, ante dichas instancias,

---

[99] *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 782 (2013).

[100] *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011). *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009). *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). *Pueblo v. Irizarry*, 156 DPR 780, 789 (2002). *Pueblo v. Maisonave*, 129 DPR 49, 62-63 (1991).

[101] *Dávila Nieves v. Meléndez Marín, supra,* a la pág. 772.

[102] *Pueblo v. Toro Martínez*, 200 DPR 834, 859 (2018). *Pueblo v. Irizarry, supra.*

[103] *Santiago Ortiz v. Real Legacy et al.*, *supra. Pueblo v. Arlequín Vélez,* 204 DPR 117, 148 (2020). *Pueblo v. Martínez Landrón*, 202 DPR 409, 424 (2019) citando a *Pueblo v. Maisonave, supra*, 63. *González Hernández v. González Hernández, supra*, 777. *Pueblo v. Viruet Camacho*, 173 DPR 563, 584 (2009). *Pueblo v. Irizarry, supra. Pueblo v. Acevedo Estrada, supra.*

[104] *González Hernández v. González Hernández, Id. Sepúlveda v. Depto. de Salud*, 145 DPR 560, 573 (1998).

este tribunal apelativo "tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta".[105]

A esos efectos, aunque no está exenta de la posibilidad de toda revisión, si la actuación del tribunal a *quo* no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del TPI a quien corresponde la dirección del proceso.[106] Los foros apelativos podremos intervenir con tal apreciación luego de realizar una evaluación rigurosa y que, de esta, surjan serias dudas, razonables y fundadas.[107]

Las decisiones discrecionales que toma el TPI no serán revocadas a menos que se demuestre que ese foro abusó de su discreción.[108] Un tribunal de justicia incurre en un abuso de discreción: (i) cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (ii) cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste; o, (iii) cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[109]

A su vez, es una norma bien establecida de nuestro sistema de justicia que la discreción judicial permea la evaluación de la evidencia presentada en los casos y controversias.[110] No obstante, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal revisor.[111] A esos efectos, conviene

---

[105] *González Hernández v. González* Hernández*, Id. Mun. de Loíza v. Sucns. Suárez et al.*, 154 DPR 333, 363 (2001). *Prieto v. Mary land Casualty Co.*, 98 DPR 594, 623 (1970).
[106] S*ierra v. Tribunal Superior, supra.*
[107] *Pueblo v. Pérez Núñez, supra.*
[108] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013). *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009).
[109] *Pueblo v. Rivera Santiago, supra.*
[110] *González Hernández v. González Hernández, supra*, a la pág. 776.
[111] *Rivera Pérez v. Cruz Corchado, supra.*

destacar que, la intervención del foro apelativo con la prueba desfilada tiene que estar basada en un análisis independiente y no a base de los hechos que exponen las partes.[112]

### III

Según hemos expuesto, la parte apelante acude ante nos solicitando la revocación de una sentencia dictada por el foro primario el 24 de junio de 2022, y notificada el 29 de junio de 2022. En su recurso, la parte apelante señaló la comisión de cinco (5) errores por parte del TPI. En resumidas cuentas, los errores imputados versan sobre (i) la resolución de la presente controversia bajo las disposiciones de un expediente de dominio clásico; (ii) la concesión de cuatrocientos (400) metros de terreno a la parte apelada; (iii) haber declarado Ha Lugar el deslinde del predio en controversia; (iv) la aplicación de la Regla 304 (5) de Evidencia con relación a la prueba de la señora Luz Divina Rivera; y (v) la imposición de una partida de honorarios de abogado a la parte apelante.

Por otro lado, la parte apelada negó la comisión de los errores imputados en su escrito en oposición. Adujo que desde que inició el pleito, se estableció que el procedimiento de expediente de dominio sería uno ordinario. Igualmente, argumentó que en el presente caso se cumplieron los requisitos de la prescripción adquisitiva y del expediente de dominio. De igual manera, sostuvo que la parte apelante no logró acreditar la razón por la cual no compareció la señora Luz Divina Rivera al juicio. Finalmente, esbozó que la imposición de honorarios de abogados por temeridad a la parte apelante procedía. Habiendo evaluado la postura de las partes, examinado y estudiado la totalidad del expediente, así como la transcripción de la prueba oral, procedemos a discutir los errores planteados por la parte apelante.

De entrada, es preciso destacar que la parte apelante, al presentar su alegato suplementario intitulado *Escrito de Apelación*, redujo a tres (3)

---

[112] *Hernández v. San Lorenzo Const.*, 153 DPR 405, 425 (2001).

sus señalamientos de error. En esencia, la parte apelante consolidó los primeros tres errores de su recurso de *Apelación* a uno solo. Siguiendo esa misma lógica, procederemos a discutir los *primeros tres (3) errores* del recurso de manera conjunta ya que estos guardan relación entre sí. Luego, procederemos a discutir el *cuarto* y *quinto* señalamiento de error, de forma separada.

En su escrito, la parte apelante plantea que el foro primario erró al declarar Ha Lugar la Demanda del caso de marras. Para sustentar su postura, presentó una transcripción de la prueba oral parcial del juicio en su fondo celebrado el 10 y 12 de mayo de 2022. Acentuamos que la parte apelante expresó en su alegato suplementario que "se obtuvo la correspondiente transcripción de los testimonios de los testigos y partes que son esenciales a los errores levantados por la parte compareciente, y no así de la totalidad del juicio en su fondo, según había sido informado en el escrito solicitando autorización".[113] Quiérase decir que este Tribunal no cuenta con la totalidad de la transcripción de los testigos que declararon en el juicio en su fondo, ni mucho menos la totalidad de la transcripción de la prueba oral.

Ante este escenario, es menester nuestro destacar que, dado a que la parte apelante eligió preterir algunos testimonios, este Tribunal revisor enfrenta una limitación seria en cuanto los aspectos de credibilidad de las personas que prestaron testimonio en el juicio, así como el ejercicio de revisar los errores presuntamente cometidos por del foro primario. Es por lo anterior, que ante la ausencia de parte de la prueba testimonial que tuvo ante la consideración el tribunal apelado, la balanza se inclina a un nivel mayor de deferencia al criterio del foro primario.

Aclarado lo anterior, procedemos a evaluar si el dictamen del foro primario fue correcto en derecho. En primer lugar, hay que destacar que en este pleito coincidían varias causas de acción. Se presentó una causa

---

[113] Alegato suplementario, intitulado *Escrito de Apelación*, a la pág. 2.

de acción de deslinde y amojonamiento, una causa de acción de expediente de dominio contradictorio y dentro de esta última, una causa de acción de declaratoria de usucapión. Si bien, el Artículo 191 de la Ley del Registro de la Propiedad Inmobiliaria es clara en cuanto a distinguir una acción de expediente de dominio de una acción de declaratoria de usucapión, dicha distinción es innecesaria puesto que en el presente caso se solicitaron ambos remedios. Así se aclaró en la Conferencia con Antelación a Juicio, en la cual el foro primario explicó que vería todas las controversias en un solo juicio y resolvería todas las controversias en una sola sentencia.[114]

Así pues, en la *Sentencia* apelada, el foro primario resolvió la causa de acción de deslinde y amojonamiento dándole entera deferencia a un *Informe Pericial Conjunto*,[115] el cual fue estipulado por las partes en el Informe de Conferencia con Antelación a Juicio.[116] Conforme surge del expediente, el mencionado informe pericial fue elaborado por un ingeniero y un agrimensor y en el mismo se configuraron las colindancias del predio en controversia y se propuso una cabida del mismo de cuatrocientos (400) metros. Dado a que las partes aceptaron las condiciones contenidas en el aludido informe, la controversia en cuanto al deslinde y amojonamiento fue resuelta correctamente.

De otra parte, en su dictamen, el TPI encontró justificado el dominio a favor de Lizardo Pérez Pérez, su esposa Norma Iris Feliciano Nieves y la Sociedad Legal de Gananciales compuesta por ambos. Fundamentó su determinación en que, a base de la prueba presentada, la parte apelada ocupó la propiedad en controversia en concepto de dueño desde 1984, totalizando así un periodo de 37 años desde esa fecha hasta la presentación de la demanda.

De un examen minucioso del expediente, así como de la transcripción de la prueba oral que obra ante nos, determinamos que no

---

[114] Véase, Entrada 116 en el SUMAC, *Minuta,* a la pág. 2.
[115] Apéndice de la parte apelante, a las págs. 97-131.
[116] *Id.,* a la pág. 69.

encontramos indicios de pasión, prejuicio, parcialidad o error manifiesto por parte del TPI al emitir este dictamen. El foro primario le dio credibilidad al testimonio vertido por el señor Lizardo Pérez Pérez y por el señor Alexis Ortiz López. Ello es constatable en las determinaciones de hechos realizadas por el TPI en la *Sentencia* apelada. En estas, el foro primario determinó que el señor Lizardo Pérez Pérez adquirió la propiedad en controversia desde 1984, y construyó su residencia durante los años 1984 al 1986. Esta información surgió de los testimonios de dichos testigos. Por tal motivo, no podemos concluir que esta determinación del foro primario sea errada.

Justificado el dominio de los apelados frente al apelante, el foro primario ordenó al Registrador de la Propiedad la inscripción del inmueble. De un examen del expediente, concluimos que, en efecto, en este caso se cumplieron con los requisitos dispuesto en el Artículo 185 de la Ley Del Registro de la Propiedad Inmobiliaria. A tono con la discusión que precede, concluimos que el foro primario no erró al declarar ha lugar la demanda del presente pleito y por consiguiente ordenar el registro del predio en controversia. Por lo tanto, razonamos que los *primeros tres errores* en el recurso de apelación no fueron cometidos.

Resuelto lo anterior, nos corresponde examinar el *cuarto* señalamiento de error imputado por la parte apelante. En este, sostienen que el foro primario incidió en aplicar la presunción de la Regla 304 (5) de Evidencia, la cual establece que toda evidencia voluntariamente suprimida resultará adversa si se ofreciere. En este caso, se presentó y se aprobó un Informe de Conferencia con Antelación a Juicio.[117] En dicho informe se anunciaron las personas que serían testigos de las partes. Entre los testigos que figuraban en dicho informe por la parte apelante se encontraba la señora Luz Divina Rivera.

---

[117] *Id.,* a las págs. 167.

Sin embargo, el 28 de marzo de 2022, Héctor Luis Ortiz López, su esposa Ana Hilda López Rivera y la Sociedad Legal de Gananciales compuesta por ambos presentaron una solicitud para enmendar el informe de conferencia con antelación a juicio.[118] En esta, indicó que la señora Luz Divina Rivera no podría comparecer, puesto que esta padecía de condiciones de salud en el aspecto cognoscitivo. El foro primario declaró esta solicitud No Ha Lugar, fundamentándose en que ya el informe estaba aprobado y discutido. Así pues, se emitieron las debidas citaciones a los testigos para el juicio en su fondo, incluyendo la de la señora Luz Divina Rivera,[119] y llegado el día del juicio, esta no compareció. Inmediatamente, el foro primario le aplicó la Regla 304 (5) de Evidencia. [120]

Examinada la transcripción de la prueba oral, notamos varias circunstancias en esta situación. En *primer* lugar, el testimonio de Luz Divina sería una prueba de carácter acumulativo dicho por la propia representación legal de Héctor Luis Ortiz López, su esposa Ana Hilda López Rivera y la Sociedad Legal de Gananciales compuesta por ambos.[121] De hecho, según el *Informe de Conferencia con Antelación a Juicio*, esta testigo declararía sobre los hechos de la demanda y el conocimiento personal sobre la titularidad de la finca objeto del pleito,[122] tal y como lo harían Tomás Medina Rodríguez y Noelia Nieves López, quienes testificaron en el juicio.[123] En *segundo* lugar, la parte apelante no objetó la imposición de esa presunción, ni brindó detalles de la situación médica de esta testigo para justificar su incomparecencia. Es decir, salvo por lo indicado por la parte apelante al momento de solicitar la enmienda al informe de conferencia con antelación a juicio para que se excluyera como testigo a la señora Luz Divina Rivera, no existe un ápice de diligencia desplegada por

---

[118] *Id.,* a las págs.164-166.
[119] *Id.,* a las págs. 184-185.
[120] Transcripción de la Prueba Oral, a la pág. 12.
[121] *Id.*, a la pág. 11.
[122] Apéndice de la parte apelante, a la pág. 82.
[123] Apéndice de la parte apelada, a las págs. 11-12, *Minuta del juicio en su fondo del 12 de mayo de 2022.*

la parte proponente de la prueba testimonial para demostrar lo alegado en ocasión del juicio en su fondo. Puntualizamos, además, que tampoco se presentó reconsideración tras denegarse la enmienda al informe de conferencia con antelación a juicio. Por ello, juzgamos que el foro primario no incidió en imponer la presunción de la Regla 304 (5) de Evidencia y por tal motivo el TPI no cometió este *cuarto* error señalado.

Finalmente, nos corresponde determinar si el TPI incidió al haber impuesto honorarios de abogado por temeridad a la parte apelante. En la *Sentencia* apelada, el foro primario justificó la imposición de honorarios de abogado por los testimonios que ofrecieron tanto el señor Héctor Ortíz López y la señora Ana Hilda López Rivera. El foro primario razonó que parte del testimonio de estos fueron contrarios a la teoría establecida en el Informe de Conferencia con Antelación a Juicio. Sabido es que la determinación de temeridad es de índole discrecional, por lo que los tribunales apelativos solo debemos intervenir con ella cuando nos enfrentemos a un caso de abuso de discreción.[124] Insistimos, la transcripción de la prueba oral presentada ante este Tribunal fue una parcial, por lo cual, corresponde otorgarle mayor deferencia a la discreción del juez de instancia. Así que, evaluada la transcripción del juicio, tal y cual fue presentada, no vemos razón alguna para intervenir con lo dispuesto por el foro primario cuando determinó imponer los honorarios por temeridad. Juzgamos, además, basándonos en lo anterior, que la suma impuesta por concepto de honorarios de abogado no tiene indicios de haber sido irrazonable, por lo que tampoco vemos motivo alguno para intervenir. Por tal motivo, el quinto señalamiento de *error* no fue cometido.

Habiendo concluido este Tribunal que los errores esgrimidos por la parte apelante no fueron cometidos, procede confirmar el dictamen apelado.

---

[124] S.*L.G. Flores–Jiménez v. Colberg, supra. Colón Santos v. Coop. Seg. Mult. P.R., supra. P.R. Oil v. Dayco, supra* (2005).

## IV

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones